DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **FLAGSTAR BANK, FSB,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 2013-0088 |
| ) | |
| **PAMELA I. GARDNER and ASSOCIATION** ) | |
| **OF ST. C CONDOMINIUM OWNERS,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**Attorneys:**
**A. J. Stone, III, Esq.,**
St. Thomas, U.S.V.I.
　　*For Plaintiff*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment" filed by Plaintiff Flagstar Bank, FSB ("Flagstar") against Defendants Pamela I. Gardner ("Gardner") and the Association of St. C Condominium Owners (the "Association"). (Dkt. No. 26). For the reasons discussed below, the Court will grant Plaintiff's Motion for Default Judgment.

## BACKGROUND

On August 20, 2013, Flagstar filed a Complaint against Gardner and the Association, alleging causes of action for debt and foreclosure of real property mortgage. (Compl., Dkt. No. 1). Flagstar asserts that Gardner is the titleholder of record to real property ("the Property"), described as:

> Condominium Unit J-144 of the St. C Condominium, located upon Plot No. 2 and Plot No. 6-G of Parcel 5 Estate St. John, St. Croix, U.S. Virgin Islands, as shown on O.L.G. Drawing No. 2647 dated August 22, 1969.

*Id.* ¶ 6. The Complaint alleges that, on July 17, 2007, Gardner executed and delivered to Allied Home Mortgage Capital Corporation ("Allied") a promissory note (the "Note"), which obligated her to pay the principal amount of $190,509.00, together with interest at a rate of 6.500% per annum, in consecutive monthly installments of $1,204.15 beginning September 1, 2007. *Id.* ¶¶ 7-8. The Note was subsequently conveyed to Flagstar. *Id.* ¶ 7. To secure payment on the Note, Gardner granted to Allied and Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Allied and its successors and assigns, a first priority mortgage dated July 17, 2007 over the Property (the "Mortgage"), which provided that Gardner would pay to Flagstar the payments due under the Note. *Id.* ¶¶ 10-11. On July 18, 2013, MERS—for itself and as nominee for Allied—assigned its entire interest in the Property to Flagstar (the "MERS Assignment"). *Id.* ¶ 12.

The Complaint further alleges that, on or about October 22, 2012, the Association recorded a Notice of Lien for Common Charges and Insurance Payments in the amount of $3,772.03 against the Property. *Id.* ¶ 13.

With regard to the debt cause of action, the Complaint provides that, on April 1, 2012, Gardner defaulted under the terms and conditions of both the Note and the Mortgage, in that monthly installments of principal, interest, and other charges became due and were not paid; that Flagstar gave notice of default to Gardner, which advised her that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage lien; that, as of the date of the Complaint, the default had not been cured; and Flagstar elected to accelerate the debt. *Id.* ¶¶ 16-20. The Complaint provides that Gardner owes Flagstar the unpaid principal balance, plus accrued interest, advances, expenses, fees, costs, and late charges. *Id.* ¶ 21. Flagstar further asserts that, under the terms of the Mortgage, it is entitled to be reimbursed for any insurance

premiums, taxes, or other charges that it pays with regard to the Property, and that under the terms of the Note and Mortgage, it is entitled to be reimbursed for reasonable attorney's fees and other expenses it has incurred to enforce payment of the Note or incidental to foreclosure of the Property. *Id.* ¶¶ 23-24.

With regard to the foreclosure cause of action against both Gardner and the Association, the Complaint provides that Flagstar has actual possession of and ownership rights to the Note and Mortgage, allowing it to maintain the foreclosure action; that Gardner is in default under the terms and conditions of the Mortgage; and Flagstar is entitled to foreclose its lien on the Property, sell the Property to satisfy the Note, and recover any deficiency from Gardner. *Id.* ¶¶ 27-29. The Complaint adds that Flagstar's mortgage lien is superior to the Association's lien. *Id.* ¶ 30.

Gardner executed a Waiver of Service of Summons on September 30, 2013, where she indicated that she understood that if she did not serve an answer or motion to dismiss, that default judgment would be entered against her. (Dkt. No. 6). The Association was served on January 10, 2014. (Dkt. No. 11). Neither Gardner nor the Association have answered the Complaint or appeared in this action. On March 20, 2014, Flagstar filed an Application for Entry of Default against the Association. (Dkt. No. 13). The Clerk of Court entered default against the Association on March 27, 2014. (Dkt. No. 16). On July 22, 2014, Flagstar filed an Application for Entry of Default against Gardner (Dkt. No. 22), and the Clerk of Court entered default against her on July 29, 2014. (Dkt. No. 25).

On August 6, 2014, Flagstar filed its Motion for Default Judgment (the "Motion") (Dkt. No. 26), along with a Memorandum of Law in Support of Motion for Default Judgment (Dkt. No. 27), an Affidavit of Indebtedness (Dkt. No. 28), and a Declaration of Counsel in Support of

Costs and Attorney's Fees. (Dkt. No. 29). In its Memorandum of Law, Flagstar argues that the procedural elements for default judgment have been satisfied because: the Association was properly served with copies of the Summons and Complaint; and the Clerk entered default against it for failing to answer, plead, or otherwise defend itself in this matter. (Dkt. No. 27 at 7). Flagstar adds that, as for Gardner, she waived service of the Summons and Complaint, and the Clerk of Court also entered default against her for failing to answer, plead, or otherwise defend herself. *Id.* Flagstar asserts that Gardner is not an infant or an incompetent person, nor is she in the military service. *Id.*

Flagstar further contends that the pleadings in this action provide a sufficient basis for entry of default judgment on the merits of its claims, as the documentation shows that: title to the Property is held by Gardner; Gardner executed the Note and the accompanying Mortgage; Flagstar has possession of the original Note and is holder of the Mortgage in its own right and by way of the MERS Assignment; Gardner defaulted under the terms of both the Note and the Mortgage; Flagstar gave Gardner proper notice of the default and she failed to cure the default; and Flagstar elected to accelerate the amounts due and owing upon default, and foreclose on the Property. *Id.* at 7-8. Flagstar further asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.* at 7-10.

In addition, Flagstar argues that its mortgage lien is superior to that of the Association as a matter of law because it holds a first priority mortgage lien pursuant to 28 V.I.C. § 922(a) and because its lien was recorded first. *Id.* at 8. As a result, the Association's lien may be foreclosed as well. *Id.*

In support of the Motion, Plaintiff filed an Affidavit of Indebtedness, signed by Andrea Bilek, a Flagstar Foreclosure Analyst, who explained how Flagstar's document management system keeps track, and maintains records, of debit and credit transactions related to the Mortgage and original Note. (Dkt. No. 28, ¶¶ 3-8). The Affidavit sets forth the amounts due and owing through July 1, 2014: $179,474.58 in unpaid principal balance; interest from March 1, 2012 through July 1, 2014 of $27,220.20; escrow advances of $2,149.28, consisting of property tax payments; accumulated late fees of $1,233.26; and inspections or other property preservation fees of $197.50; for a total amount due of $210,274.82. *Id.* ¶¶ 10-13. Ms. Bilek asserts that interest accrues at the per diem rate of $31.96. *Id.* ¶ 14. She also states that, based on the information she reviewed in connection with the loan, she has no information indicating that Gardner was either a minor or incompetent. In addition, pursuant to an investigation conducted on June 20, 2014 using official online resources provided by the Department of Defense's Manpower Data Center, there was no record that Gardner was an active member of the military service. *Id.* ¶ 16, Dkt. No. 28-8.

In the Declaration of Counsel in Support of Costs and Attorney's Fees, Flagstar's Counsel, A. Jennings Stone, Esq., averred that he, as a Senior Associate Attorney, billed at $250.00 per hour on this matter. (Dkt. No. 29). He attached billing records showing that the total time spent on this matter was 21.85 hours through August 5, 2014; that the total amount of attorney's fees incurred was $5,462.50; and that the total amount of costs expended was $1,019.12. *Id.*; Dkt. No. 29-1.

## APPLICABLE LEGAL PRINCIPLES

In an application for an entry of default judgment, "'the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes

5

of a default judgment.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951).

An application for entry of default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemember's] Civil Relief Act.

*Bank of Nova Scotia v. Abdallah,* 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013) (quoting *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May 28, 2009). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

## ANALYSIS

### A. Default Judgment

Flagstar has satisfied all of the requirements necessary to obtain a default judgment against Gardner. It has shown that: (1) default was entered against Gardner by the Clerk of Court (Dkt. No. 25); (2) Gardner has not appeared; (3) Gardner is neither an infant nor incompetent (Dkt. No. 28, ¶ 16); and (4) Gardner validly waived service of process. (Dkt. No. 6). In addition, Flagstar provided a Military Status Report from the Department of Defense Manpower Data Center showing that Gardner was not in the military service as defined in the Servicemember's Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 28-8). Flagstar has also shown with specificity how it calculated the amount of the judgment. (Dkt. No. 28).

Similarly, with regard to the Association, Flagstar has shown that: (1) default was entered against the Association by the Clerk of Court (Dkt. No. 16); (2) the Association has not appeared; and (3) the Association was served with the Summons and Complaint in this action (Dkt. No. 11). On the merits of Flagstar's claims, Flagstar has shown that, pursuant to 28 V.I.C. 922(a), its mortgage lien is superior to that of the Association's as a matter of law.

Finally, the Court has considered the *Chamberlain* factors and finds that the prejudice to Flagstar resulting from Gardner's breach of her contractual obligations, together with the apparent absence of a litigable defense, weighs in favor of the Court granting default judgment. In addition, Gardner's default was a result of her culpable conduct as evidenced by her refusal to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases

finding culpable conduct where defendants failed to answer complaint). Similarly, the Association has no meritorious defense to this action; its default was a result of its culpable conduct; and Flagstar will suffer prejudice if judgment is delayed by the Association. Consequently, default judgment against both Defendants is appropriate in this action.

### B. Attorney's Fees and Costs

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b).

Under both the terms of the Note and Mortgage, the Bank may recover "reasonable" attorney's fees. (Dkt. No. 14-1, ¶ 6(E); Dkt. No. 14-2, ¶ 19). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant

community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

Flagstar seeks $5,462.50 in attorney's fees as compensation for 21.85 hours of work billed in this matter. This amount is substantially higher than most requests for attorney's fees in run-of-the-mill default judgment debt and foreclosure cases. *See, e.g., Bank of America v. Deshazer*, 2014 WL 7450487, at *5 (D.V.I. Dec. 30, 2014) (awarding $3,645.00 in attorney's fees for 14.55 hours of work); *Flagstar Bank, FSB v. Smith*, 2014 WL 860316, at *5 (D.V.I. Mar. 5, 2014) (awarding $2,312.50 in attorney's fees where counsel spent a total of 9.50 hours on the case); *Flagstar Bank FSB v. Rivers,* 2014 WL 1101859, at *4 (D.V.I. Mar. 18, 2014) (awarding $2,107.50 in attorney's fees where counsel spent a total of 10.00 hours on the case).

Having reviewed the billing history, the Court observes that: (1) counsel billed only once in a one-tenth of an hour increment; otherwise the smallest increment billed was a one-quarter of an hour segment; (2) there appeared to be an error in the warranty deed that required clarification; (3) counsel had contacts with the Association concerning proper service; (4) Flagstar was required to file a motion to extend the time to serve the Association because it learned that its original service was ineffective; (5) Flagstar incorrectly filed an Application for Entry of Default against Gardner that had to be revised, and the revised application took 2.25 hours; (6) Flagstar was required to file a status report in response to an Order to Show Cause because no progress had been made in this case; and (7) Flagstar sought default against two Defendants. The Court finds that while some of these factors would, understandably, increase the amount of attorney's fees sought, other factors result in additional fees that should not be compensated. In the latter regard, certain entries on the docket were caused by Flagstar—*i.e.*,

having to respond to the Order to Show Cause (#6, above); improperly serving the Association (#4, above); and incorrectly filing Gardner's Application for Entry of Default (#5, above). Accordingly, the Court will reduce Flagstar's request for attorney's fees by $1,100.00.[1]

With regard to the second step of assessing the reasonableness of attorney's fees—whether the hourly rate sought is reasonable—Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). Flagstar has also provided affirmations from three Virgin Islands attorneys who aver that the typical hourly rate for similar services charged by comparable attorneys in the Virgin Islands is between $250.00 and $300.00 per hour. (Dkt. Nos. 27-3, 27-4, 27-5). The Court therefore concludes that the $250.00 per hour rate charged by Flagstar's attorney is reasonable and falls within the scope of rates for such services. (Dkt. No. 27).

Based on the foregoing, the Court concludes that an award of $4,362.50 in attorney's fees through August 5, 2014 is reasonable and will be awarded by the Court.

With regard to costs, under the terms of the Note, Gardner agreed to pay Flagstar back for "all of its costs and expenses in enforcing this Note." (Dkt. No. 28-1, ¶ 6(E)). Pursuant to the terms of the Mortgage, Gardner agreed to "pay[] all expenses incurred in enforcing this Security Instrument[.]" (Dkt. No. 28-2, ¶ 19). The Court infers that in order for costs to be reimbursed,

---

[1] The Court arrives at this figure by cutting: 1.5 hours of billed time on December 18, 2013 for drafting a motion to extend time to serve the Association; 0.25 hours of billed time on December 19, 2013 for following up on issuance of summons for the Association manager; 0.10 hours of billed time on January 7, 2014 for following up on service on the Association; 0.25 hours of billed time on July 7, 2014 for drafting a status report in response to an Order to Show Cause issued by the Court; and 2.25 hours on July 21, 2014 for revising the motion for entry of default and counsel's declaration to correct an incorrect filing, pursuant to the Deputy Clerk of Court's request.

they must be reasonable. *Cf. Lewis v. Mazda Motor of Am.,* 2012 U.S. Dist. LEXIS 180222, at *7 (D.V.I. Dec. 20, 2012) (awarding reasonable costs in discovery dispute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands fee-shifting statute governing the award of attorney's fees and costs permits reimbursement for reasonable fees and costs). The Bank is seeking reimbursement of $1,019.12 for the following costs: title search, recording fees, on-line search on Accurint (People/Business search), filing fees for Complaint, messenger service, process server, courier service, and postage. (Dkt. No. 29-1). The Court finds that these costs are reasonable, and—pursuant to the plain language of the Note and Mortgage—will award costs in the amount of $1,019.12.

## CONCLUSION

Flagstar has satisfied the requirements necessary for entry of a default judgment against Pamela I. Gardner and the Association of St. C. Condominium Owners. Accordingly, Plaintiff's Motion for Default Judgment (Dkt. No. 26) will be granted on the debt and foreclosure causes of action. In addition, the Court will award $4,362.50 in attorney's fees and $1,019.12 in costs, for a total award of $5,381.62 in attorney's fees and costs through August 5, 2014.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: March 31, 2015              _____/s/_____
                                   WILMA A. LEWIS
                                   Chief Judge